UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

STRATEGIC EQUIPMENT AND SUPPLY )
CORPORATION, )
 )
       Plaintiff, )
 )
v. )   No.: 3:11-CV-313
 )       (VARLAN/SHIRLEY)
MOBILE FIXTURE & EQUIPMENT )
COMPANY, et al., )
 )
       Defendants. )

## MEMORANDUM OPINION AND ORDER

This civil action is before the Court on Mickael Slemp's Motion for Partial Dismissal [Doc. 12]. Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, defendant Mickael Slemp ("Slemp") submits that Count II of the complaint for breach of contract fails to state a claim upon which relief can be granted [*Id.*]. Plaintiff Strategic Equipment and Supply Corporation ("Strategic" or "plaintiff") filed a response in opposition [Doc. 16], and Slemp replied [Doc. 19]. The Court has carefully considered the motion for partial dismissal, and for the reasons explained herein, the Court will grant in part and deny in part the motion.

**I.   Background[1]**

Plaintiff is a food service equipment, supply, and design company that offers design, installation, and service products in the foodservice equipment market [Doc. 1-1 ¶ 6]. Slemp

---

[1]As Slemp has moved to dismiss for failure to state a claim upon which relief may be granted, all facts and inferences to be drawn from the complaint are construed in plaintiff's favor.

was employed by Strategic from December 1, 1985, through January 4, 2011, most recently as vice president of sales [*Id*. at ¶ 8].

On February 14, 2005, Slemp signed an Employment Agreement (the "Employment Agreement"), which, among other things, requires him to hold in confidence and not directly or indirectly disclose, use, copy, or make lists of any of Strategic's confidential information or proprietary data [*Id*.]. The Employment Agreement also provides that Slemp would not, during employment and for a period of two years thereafter, solicit or induce any employee of Strategic or its subsidiaries to terminate his or her employment with Strategic [*Id*.]. Further, the Employment Agreement provides that Slemp would not, for a period of two years after leaving Strategic, become employed by a business engaged in business activities similar to those of Strategic [*Id*. at ¶ 9]. Plaintiff alleges that, despite this contractual obligation, Slemp voluntarily separated from Strategic and became employed by defendant Mobile Fixture & Equipment Company ("Mobile") [*Id*.]. On April 19, 2011, Slemp signed another agreement reaffirming his commitment to refrain from soliciting certain Strategic customers and making clear that the non-solicitation and confidentiality provisions of the Agreement remained in effect (the "Post-Employment Agreement") [*Id*.].

Leonard Winton, III ("Winton"), was employed by Strategic from December 4, 1989, through June 3, 2011, as a computer assisted design ("CAD") supervisor [*Id*. at ¶ 10]. In that capacity, Winton was responsible for developing and designing CAD drawings for restaurant layouts [*Id*.]. He reported to Slemp and Ed Poore ("Poore"), Strategic's executive vice president of operations [*Id*.]. During his employment, he was given access to confidential

2

and proprietary information, including, but not limited to, customer lists, pricing structures, proposals, technical drawings, and designs, documents allegedly central to Strategic's business operations [*Id.* at ¶ 16].

Winton signed Strategic's Confidentiality Agreement on December 16, 2003 [*Id.* at ¶ 11]. The Confidentiality Agreement provides that Winton would refrain from using any "Proprietary Information," a term defined in the Confidentially Agreement, and that such covenant survives termination [*Id.* at ¶ 12]. Winton also signed an Acknowledgment Receipt for Strategic's Employee Handbook [*Id.* at ¶ 14]. The Employee Handbook includes a policy that prohibits Winton from disclosing confidential information [*Id.* at ¶ 15].

On June 3, 2011, Winton voluntarily terminated his employment with Strategic [*Id.* at ¶ 17]. Soon thereafter, he accepted a similar position at Mobile [*Id.*]. Prior to his leaving Strategic, Poore allegedly reminded Winton that he should not take any of Strategic's property, including confidential or proprietary information, and Winton represented that he was taking only his personal effects [*Id.*]. Subsequent to his leaving Strategic, Strategic's president, Marty Monnat ("Monnat"), sent Winton a letter reminding him of his continuing obligations concerning confidentiality [*Id.* at ¶ 18].

Two weeks after Winton left Strategic, another employee of Strategic, Nathan Duff ("Duff"), left Strategic to join Mobile [*Id.* at ¶ 19]. Duff was a project manager and bidder for Strategic and was employed from August 29, 2005, until he left on June 17, 2011 [*Id.*]. Duff reported to Slemp and Poore [*Id.*].

A fourth employee of Strategic, Emmanuelle Medeiros De Inturias ("Inturias"), a contract administrator, also left Strategic for Mobile [*Id.*]. Inturias was employed by Strategic from July 9, 2007, through June 20, 2011 [*Id.*]. Inturias reported to Winton [*Id.*].

Plaintiff alleges that Mobile's hiring of Slemp, Winton, Duff, and Inturias has allowed Mobile to create a fully-functioning office in Knoxville, Tennessee, a location where it had not previously maintained an office [*Id.* at ¶ 20]. Further, upon information and belief, plaintiff alleges that Mobile's Knoxville office will be staffed by former Strategic employees performing similar jobs as they did for Strategic [*Id.*].

As a result of Slemp, Winton, Duff, and Inturias leaving Strategic, along with the fact that Winton did not respond to Monnat's letter, Strategic began an examination of the computer formerly used by Winton during his employment [*Id.* at ¶ 21]. The investigation revealed forensic evidence that Winton and Slemp transferred confidential and proprietary information out of Strategic [*Id.*].

In particular, it is alleged that as early as May 2011, Winton and Slemp exchanged numerous emails using personal, web-based email accounts [*Id.* at ¶ 22]. The forensic evidence recovered at the time of the filing of the complaint revealed that the two discussed the possibility and developed a plan for Winton to leave Strategic and join Mobile [*Id.*]. In addition, emails referenced the names of Strategic's customers and accounts, and some referenced attachments Winton sent to Slemp [*Id.*].

During the same time, including on both the day before and the day after his separation from Strategic, Winton allegedly connected external storage drives to his

4

Strategic-issued laptop and accessed confidential and proprietary files from the laptop's hard drive and Strategic's servers [*Id.* at ¶ 23]. Forensic analyses confirmed that the external drives contained copies of Strategic's confidential and proprietary information, including, for example, technical drawings information related to Strategic's customers and design projects [*Id.*].

On June 24, 2011, Strategic's counsel sent demand letters to Mobile, Winton, Duff, and Inturias, seeking, among other things, the return of Strategic's files and records copied or removed from Strategic, and demanding that they avoid or prevent the use and disclosure of any of Strategic's confidential or proprietary information [*Id.* at ¶ 24]. In response, Winton telephoned Strategic's counsel, allegedly admitting that he had downloaded, copied, and removed Strategic's confidential and proprietary information using his personal external drives [*Id.* at ¶ 25]. Plaintiff claims that it did not, at any time, consent, explicitly or impliedly, to Winton or Mobile copying, removing, or using Strategic's confidential and proprietary information after Winton left Strategic [*Id.* at ¶ 26].

Count II of the complaint alleges breach of contract by Winton and Slemp [*Id.* at ¶¶ 38–47]. In relevant part, plaintiff alleges that Slemp breached the Employment Agreement and the Post-Employment Agreement [*Id.* at ¶ 36]. Plaintiff alleges that section 6(b) of the Employment Agreement provides that:

> Slemp agreed not to, for a period of two years following his separation from Strategic, (i) solicit, entice, persuade or induce any employee of [Strategic] or any of its Subsidiaries to terminate his employment by [Strategic] or any of its Subsidiaries or to become employed or otherwise engaged for

> compensation by any Person other than [Strategic] or any of its Subsidiaries; or (ii) approach any such employee for any of the foregoing purposes; or (iii) authorize, solicit or assist in the taking of such actions by any third party.

[*Id.* at ¶ 46 (internal quotation marks omitted)]. Plaintiff also claims this agreement was affirmed through Slemp's Post-Employment Agreement [*Id.*]. Further, plaintiff alleges that email records recovered from Winton's Strategic computer reflect communications between Slemp and Winton "long before" Winton gave his notice of intent to resign from Strategic and accept employment with Mobile [*Id.* at ¶ 47].

## II. Standard of Review

A party may move to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure Rule 12(b)(6). In order to survive a Rule 12(b)(6) motion, a complaint must contain allegations supporting all material elements of the claims. *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008). To satisfy this standard, a plaintiff need only offer "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the [opposing party] fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). In determining whether to grant a motion to dismiss, all well-pleaded allegations must be taken as true and must be construed most favorably toward the non-movant. *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 855 (6th Cir. 2003). Detailed factual allegations are not required, but a party's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions."

6

*Twombly*, 550 U.S. at 555. A formulaic recitation of the elements of a cause of action will not do, neither will "'naked assertion[s]'devoid of 'further factual enhancement[,]'" nor an unadorned, the-defendant-unlawfully harmed-me accusation. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 555, 557).

**III.  Analysis**

   **A.  The Parties' Arguments**

Slemp argues that he has breached neither the terms of the Employment Agreement nor the Post-Employment Agreement [Doc. 12]. In support of this claim, Slemp points to section 6(b) of the Employment Agreement, which provides:

> (b)  Except with the Board's prior written approval, during the Employment Period and for two years after the termination of the Employment Period, the Executive shall not, directly or indirectly:
>
> > (i) solicit, entice, persuade or induce any employee of the Company or any of its Subsidiaries to terminate his employment by the Company or any of its Subsidiaries or to become employed or otherwise engaged for compensation by any Person other than the Company or any of its Subsidiaries; or
> >
> > (ii) approach any such employee for any of the foregoing purposes; or
> >
> > (iii) authorize, solicit or assist in the taking of such actions by any third party.

[Doc. 1-1, Ex. A]. Slemp also points to section 2, which defines "Employment Period" as the period between the Effective Date of the of the Employment Agreement and the second anniversary of the Effective Date [Doc. 13]. He argues that the Effective Date of the

7

agreement was February 14, 2005, and that the second anniversary was February 14, 2007 [*Id.*]. Thus, reading sections 2 and 6(b) together, Slemp contends that "any restraints on Slemp's ability to communicate with Winton expired on February 14, 2009" [*Id.*].

In response, plaintiff argues Slemp's Employment Period "clearly" was extended and did not end until January 4, 2011 [Doc. 16]. Plaintiff points to section 2 as well, which plaintiff clarifies provides that the Employment Period may be extended [*Id.*]. Reading sections 2 and 6(b) together, plaintiff claims that Slemp is bound by the non-solicitation obligation of section 6(b) until January 4, 2013 [*Id.*]. Alternatively, and to the extent the Court finds that section 2 of the Employment Agreement is ambiguous, plaintiff argues such finding would preclude granting Slemp's motion [*Id.*]. Finally, plaintiff contends that Slemp has not moved to dismiss on any basis related to the Post-Employment Agreement [*Id.*].

In reply, Slemp again points to section 2 of the Employment agreement, which provides that "[u]pon expiration of the Employment Period . . . , if [Slemp] continues in the employment of the Company, then he shall thereafter automatically be deemed an employee at will" [Doc. 19; Doc. 1-1, Ex. A]. He also points to section 10, to argue that there was no mutual agreement to extend the Employment Period because any such agreement had to be set forth in "a written instrument approved by the Board, and executed by the Company and the Executive," and no such document exists [Doc. 19]. Finally, plaintiff claims that, considering other sections of the agreement, "this was the result contemplated by the Employment Agreement" [*Id.*]. He specifically references section 6(a) and (c), which impose post-employment restraints upon Slemp, commencing upon the termination of his

8

employment [*Id.*]. He claims that, had Strategic wanted to impose similar restraints upon Slemp's solicitation of Strategic employees, then it could have done so [*Id.*].

### B. Governing Law

The Court observes that plaintiff attached to the complaint a copy of the Employment Agreement, but not a copy of the Post-Employment Agreement.[2] The Employment Agreement provides that the "[a]greement and the rights and obligations [t]hereunder shall be governed by and construed in accordance with the laws of the State of Texas, without regard to principles of conflicts of law of Texas or any other jurisdiction" [Doc. 1-1, Ex. A].[3] The Court also observes that, in response to Slemp's motion, plaintiff refers to Tennessee contract law [Doc. 16]. Accordingly, although no party addresses the issue, the Court must determine what law governs plaintiff's claims for breach of contract against Slemp.

"In federal question cases, a District Court entertaining pendent state claims should follow the choice of law rules of the forum state." *Glennon v. Dean Witter Reynolds, Inc.*, 83 F.3d 132, 136 (6th Cir. 1996). In Tennessee, "[i]f the parties manifest an intent to instead apply the laws of another jurisdiction, then that intent will be honored provided certain

---

[2]In general, when a court is presented with matters outside the pleadings on a 12(b)(6) motion to dismiss, the court must either exclude the materials or convert the motion to one for summary judgment. Fed. R. Civ. P. 12(d). The Sixth Circuit, however, takes "a liberal view of what matters fall within the pleadings for purposes of Rule 12(b)(6)," *Armengau v. Cline*, 7 Fed. App'x 336, 344 (6th Cir. 2001), and certain documents therefore may properly be considered under Rule 12(b)(6) without converting the motion to one for summary judgment. These include "the Complaint and any exhibits attached thereto." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

[3]Defendants removed this action from state court, submitting that the Court has jurisdiction over plaintiff's Computer Fraud and Abuse Act claim pursuant to 28 U.S.C. § 1331 [Doc. 1-1].

9

requirements are met." *Messer Griesheim Indus. v. Cryotech of Kingsport, Inc.*, 131 S.W.3d 457, 475 (Tenn. Ct. App. 2003) (citation omitted). For the intent to be honored, the choice-of-law provision must be executed in good faith; the chosen jurisdiction must bear a material relationship to the transaction; the basis of the choice must be reasonable; and the parties' choice must not subvert the policy of a state having a materially greater interest and whose law would otherwise govern. *Id.* (citation omitted).

Here, there is no reason for the Court to conclude that the choice-of-law provision was executed in bad faith. Further, the chosen jurisdiction, Texas, is the state in which Strategic is headquartered; thus, it bears a material relationship to the transaction and is a reasonable choice [*See* Doc. 1-1 ¶ 1]. Finally, the Court's examination of the relevant Texas and Tennessee law persuades it that the choice of Texas law does not subvert the policies of Tennessee, the state having an arguably materially greater interest than Texas and whose law would otherwise govern.

Pursuant to Texas law, a breach-of-contract claim requires (1) the existence of a valid contract, (2) that plaintiff performed or tendered performance, (3) that the defendant breached the agreement, and (4) that the plaintiff was damaged as a result of the breach. *See Landrum v. Davenport*, 616 S.W.2d 359, 361 (Tex. App. 1981). A Texas's "court's primary concern when interpreting a contract is to ascertain the parties' true intentions as expressed in the instrument." *Bank One, Texas, N.A. v. F.D.I.C.*, 16 F. Supp. 2d 698, 707 (N.D. Tex. 1998) (citation omitted). "To achieve this objective, the court should examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract

so that none will be rendered meaningless." *Id.* (citation omitted). "Language should be given its plain and grammatical meaning unless it definitely appears that the intention of the parties would thereby be defeated." *Id.* (citation omitted). "Where the contract can be given a definite legal meaning or interpretation, it is not ambiguous and the court will construe it as a matter of law." *Id.* (citation omitted). "A contractual provision is ambiguous when its meaning is uncertain and doubtful or if it is reasonably susceptible to more than one interpretation." *Id.* (citation omitted). "Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole in light of the circumstances present when the contract was entered." *Id.* (citation omitted).

Pursuant to Tennessee law, "[t]he essential elements of any breach of contract claim include (1) the existence of an enforceable contract, (2) the nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of the contract." *ARC LifeMed, Inc. v. AMC-Tenn., Inc.*, 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005). In interpreting contracts, the Tennessee Supreme Court has explained:

> A cardinal rule of contractual interpretation is to ascertain and give effect to the intent of the parties. Courts must look to the plain meaning of the words in a contract to determine the parties' intent. If the contractual language is clear and unambiguous, the literal meaning controls; however, if the words are ambiguous, i.e., susceptible to more than one reasonable interpretation, the parties' intent cannot be determined by a literal interpretation of the language. In such circumstances, "the court must apply established rules of construction to determine the intent of the parties."

11

*Allmand v. Pavletic*, 292 S.W.3d 618, 630 (Tenn. 2009) (quoting *Allstate Ins. Co. v. Watson*, 195 S.W.3d 609, 611 (Tenn. 2006)) (other citations omitted). "An ambiguous provision in a contract generally will be construed against the party drafting it," and "when a contractual provision is ambiguous, a court is permitted to use parol evidence, including the contracting parties' conduct and statements regarding the disputed provision, to guide the court in construing and enforcing the contract." *Allstate*, 194 S.W.3d at 612 (citations omitted). "Only if ambiguity remains after the court applies the pertinent rules of construction does [the legal meaning of the contract] become a question of fact appropriate for a jury." *Planters Gin Co. v. Fed. Compress & Warehouse Co.*, 78 S.W.3d 885, 890 (Tenn. 2002) (alteration in original and citations and quotation marks omitted).

    C.    **Claim for Breach of the Employment Agreement**

Whether considered under Texas or Tennessee law, the Court finds the language of section 6(b) of the Employment Agreement unambiguous. The express terms of section 6(b) limit application to during only the Employment Period and for a period of two years after termination of the Employment Period. The Employment Period is defined by section 2 as commencing upon the Effective Date and ending upon the second anniversary of the Effective Date. The Effective Date is defined in section 1 as "the date on which the transactions contemplated by the Purchase Agreement are consummated" [Doc. 1-1, Ex. A]. An introductory clause of the Employment Agreement identifies the Purchase Agreement as being dated the date of the Employment Agreement, which is February 14, 2005. Thus, as Slemp contends, the Effective Date of the Employment Agreement was February 14, 2005,

and the Court observes that plaintiff does not contend otherwise. Further, pursuant to section 2, the Employment Period commenced upon February 14, 2005, and continued for two years, through February 14, 2007. The terms of section 6(b), therefore, applied through only February 14, 2009.

Plaintiff argues that the Employment Period was "clearly" extended and did not end in 2009 because Slemp remained an employee of Strategic until January 4, 2011 [Doc. 16]. The Court finds this conclusory argument unconvincing. Although the Employment Period could have been extended, the plain language of section 10 of the Employment Agreement dictates that such extension had to be achieved through "a written instrument approved by the Board, and executed by the Company and the Executive" [Doc. 1-1]. Neither party has identified any such instrument, and even if there were an oral agreement that the Employment Period were to be extended, section 10 dictates that "[a]ny amendment or modification without such approval and execution shall be null and void *ab initio* and of no effect" [*Id.*]. Moreover, section 2 provides that, "[u]pon expiration of the Employment Period . . . , if [Slemp] continues in the employment of the Company, then he shall thereafter automatically be deemed an employee at will" [*Id.*]. Thus, the Employment Agreement expressly contemplates the idea that Slemp could continue his employment with Strategic after expiration of the Employment Period.

Finally, the Court observes that other provisions of the Employment Agreement expressly provide for application during Slemp's entire employment with Strategic and also after Slemp's termination of employment. For example, section 6(a), which sets forth Slemp's obligations regarding Strategic's confidential information and proprietary data, provides that Slemp is bound by such obligations "[d]uring and following [Slemp's] employment by the Company" [*Id.*]. Likewise, section 6(c), which sets forth a noncompete period, limits the noncompete period to the time of Slemp's employment and for a period of "two (2) years after the termination of [Slemp's] employment for any reason" [*Id.*]. And, section 6(d) contemplates that the provisions of section 6 are separate obligations, having individual durations or scopes.[4]

In sum, after examining the entire writing and giving the language of the Employment Agreement its plain and grammatical meaning, the Court finds that section 6(b) is unambiguous and the obligations set forth therein expired on February 14, 2009. As the allegations set forth in the complaint address conduct occurring well after that date [*see id*

---

[4]Section 6(d) provides:

> If any court determines that any portion of this Section 6 is invalid or unenforceable, the remainder of this Section 6 shall not thereby be affected and shall be given full effect without regard to the invalid provision. If any court by a final and non-apealable [sic] judgment construes any of the provisions of this Section 6, or any part thereof, to be unreasonable because of the duration or scope of such provision, such provision shall be automatically deemed to be amended to cover the maximum duration and scope not so determined to be unreasonable.

[Doc. 1-1].

14

¶ 22 (alleging that the communications between Slemp and Winton began "at least as early as May, 2011")], the Court finds that the complaint fails to state a claim that Slemp breached section 6(b) of the Employment Agreement. This claim against him, therefore, will be dismissed.

### D. Claim for Breach of the Post-Employment Agreement

The Court has not been provided a copy of the Post-Employment Agreement, and is informed only by plaintiff's allegations that such agreement "made clear that the provisions of Slemp's Employment Agreement—including the non-solicitation and confidentiality provisions—remained in full force and effect" [Doc. 1-1 ¶¶ 9, 46]. Assuming as true the allegations of the complaint, the Court cannot find that Slemp did not breach the agreement. Unlike with the Employment Agreement, the Court cannot discern whether any obligations regarding non-solicitation and confidentiality were limited to a specific period that expired. And Slemp provides the Court with no specific argument as to why he did not breach the provisions of the Post-Employment Agreement as he did with the Employment Agreement. Accordingly, and because it appears plaintiff's claim regarding breach of the Post-Employment Agreement is sufficient to state a claim, the Court will deny Slemp's motion as it relates to that claim.

## IV. Conclusion

For the reasons explained above, the Court hereby **GRANTS IN PART** and **DENIES IN PART** Mickael Slemp's Motion for Partial Dismissal [Doc. 12], and with respect to Court II of the complaint, the claim for beach of section 6(b) of the Employment Agreement against defendant Mickael Slemp is **DISMISSED**.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE